IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAURIE TERRYL CHANDLER, | ) | CIVIL NO. 18-00280 HG-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER REVERSING THE DECISION OF THE SOCIAL SECURITY
ADMINISTRATION COMMISSIONER AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS**

This case involves the appeal of the Social Security
Administration Commissioner's denial of Disability Insurance
Benefits and partial denial of Supplemental Security Income
Benefits to Plaintiff Laurie Terryl Chandler.

On January 7, 2014, Plaintiff filed an application for
Disability Insurance Benefits pursuant to Title II of the Social
Security Act. Plaintiff also filed an application for
Supplemental Security Income pursuant to Title XVI of the Social
Security Act.

Plaintiff filed for benefits stating she has been disabled
since July 15, 2013, because of two separate instances of breast
cancer, bilateral total mastectomies, tendinitis, carpal tunnel
syndrome, chronic pain, depression, and anxiety.

Plaintiff made sufficient payments to the Social Security
Administration through her former employment as a massage

therapist in order to be insured through March 31, 2016.

The Social Security Administration initially denied her applications for both Disability Insurance Benefits and Supplemental Security Income.

Following an administrative hearing, the Administrative Law Judge ("ALJ") issued a decision that was partially favorable to Plaintiff.

First, the ALJ denied Plaintiff's application for Disability Insurance Benefits pursuant to Title II of the Social Security Act. Plaintiff was found to be ineligible for Disability Insurance because she was not disabled before the date she was last insured. The ALJ specifically held that Plaintiff was not disabled for a continuous period of at least 12 months following her onset disability date of July 15, 2013 through March 31, 2016, the date Plaintiff was last insured.

Second, the ALJ partially granted Plaintiff's application for Supplemental Security Income pursuant to Title XVI of the Social Security Act. The ALJ found that Plaintiff was not disabled for a continuous period of at least 12 months from her alleged onset disability date of July 15, 2013 through August 3, 2016.

The ALJ found that Plaintiff was first disabled as of August 3, 2016, the date when Plaintiff's age category changed to an individual of advanced age. The ALJ found that as of August 3, 2016, when Plaintiff became a person of advanced age, she was entitled to Supplemental Security Income.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision and Plaintiff appealed to this Court.

The Court **REVERSES** the decision of the Social Security Administration Commissioner and **REMANDS** the case for further evaluation.

Remand is required on an open record to allow the Administrative Law Judge to properly consider the opinions of Plaintiff's treating physicians and any other evidence necessary to evaluate the totality of Plaintiff's circumstances and various infirmities and symptoms.

## PROCEDURAL HISTORY

On January 7, 2014, Plaintiff Laurie Terryl Chandler filed applications for Disability Insurance Benefits and Supplemental Security Income with the Social Security Administration. (Administrative Record ("AR") at pp. 174-85, ECF No. 17).

On June 2, 2014, the Social Security Administration denied Plaintiff's initial applications.  (AR at pp. 77-92).

On November 25, 2014, the Administration denied her request for reconsideration.  (AR at pp. 97-116).

Following the denial of Plaintiff's request for reconsideration, she sought a hearing before an Administrative Law Judge ("ALJ").  (AR at p. 130).

On November 30, 2016, an ALJ conducted a hearing on Plaintiff's applications.  (AR at pp. 29-76).

On February 1, 2017, the ALJ issued a written decision denying Plaintiff's application for Disability Insurance Benefits and partially granting Plaintiff's application for Supplemental Security Income. (AR at pp. 12-22).

Plaintiff sought review by the Appeals Council for the Social Security Administration. The Appeals Council denied further review of Plaintiff's application on May 23, 2018, rendering the ALJ's decision as the final administrative decision by the Commissioner of Social Security. (AR at pp. 1-3).

On July 20, 2018, Plaintiff sought judicial review of the Commissioner of Social Security's final decision to deny her application for Disability Benefits and partially grant her application for Supplemental Security Income in this Court pursuant to 42 U.S.C. § 405(g). (Complaint for Review of Social Security Disability Insurance Determination, ECF No. 1).

On October 1, 2018, the Magistrate Judge issued a briefing schedule. (ECF No. 18).

On November 27, 2018, Plaintiff filed PLAINTIFF'S BRIEF IN SUPPORT OF REMAND. (ECF No. 19).

On December 6, 2018, Plaintiff filed her UNOPPOSED MOTION FOR LEAVE TO APPEAR WITHOUT LOCAL COUNSEL AND TO ATTEND ORAL ARGUMENT VIA TELEPHONE. (ECF No. 20).

On December 20, 2018, the Court granted Plaintiff's Motion to Appear Without Local Counsel and To Attend Oral Argument via Telephone. (ECF No. 21).

On January 7, 2019, the Defendant filed DEFENDANT'S

ANSWERING BRIEF.  (ECF No. 22).

Plaintiff declined to file an Optional Reply Brief.

On February 25, 2019, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.

## BACKGROUND

### Plaintiff's Work History

Plaintiff is a 57 year-old female.  (Administrative Record ("AR") at p. 20, ECF No. 17).

From 1998 to 2001, Plaintiff worked as a residential aide at a detox center.  (Id. at pp. 41-45, 190).

From 2001 to 2003, Plaintiff trained to be a licensed massage therapist.  (Id. at pp. 41, 192).

From 2003 to 2013, Plaintiff was self-employed as a massage therapist.  (Id. at p. 204).  Plaintiff made sufficient payments to the Social Security Administration to be insured until March 31, 2016.

On July 15, 2013, Plaintiff alleges she became disabled and unable to work.  (Id. at p. 40).

From September 2013 to 2016, Plaintiff worked ten hours a week as a chore provider for an elderly woman.  (Id. at p. 38).

### Plaintiff's Medical History

### Carpal Tunnel Syndrome and Left Elbow Tendinitis

In August 2012, Plaintiff was diagnosed with carpal tunnel

syndrome in her right hand.  Plaintiff had previously suffered from carpal tunnel syndrome but had surgery to alleviate the symptoms.  The condition returned and Plaintiff reported that she was experiencing numbness, tightening, and tingling in her right hand and thumb.

In September 2012, Plaintiff again had surgery on her right hand to alleviate her carpal tunnel syndrome.  (Id. at p. 255).

Plaintiff also suffered pain in her left elbow.  (Id.) Plaintiff had injections in her left elbow to help alleviate the symptoms.  Plaintiff was prescribed a splint to assist her.  (Id. at 245).

On February 2, 2015, Plaintiff underwent surgery on her left hand for carpal tunnel syndrome.  (Id. at p. 460).

## Breast Cancer, Depression, And Anxiety

On May 17, 2013, a tumor was discovered in Plaintiff's left breast during a routine mammogram screening.  (Id. at p. 260).  A biopsy revealed it was a grade 2 invasive ductal carcinoma. (Id.)

Plaintiff experienced anxiety and depression following her diagnosis.  (Id. at p. 341).  She also had chronic headaches, numbness, tingling, memory changes, and hearing issues.  (Id. at pp. 343, 350).

On July 24, 2013, Plaintiff had a partial mastectomy of her left breast.  (Id. at pp. 338, 408-19).

Following her breast surgery, Plaintiff underwent radiation

treatment from August 27, 2013 until October 11, 2013.  (Id. at p. 328).  Plaintiff underwent approximately 32 rounds of radiation treatment on her left breast.  (Id.)

Plaintiff continued to experience anxiety and depression following her surgery and during her radiation treatment.  (Id. at pp. 295, 320, 323).  A mental illness assessment in September 2013 revealed that Plaintiff suffers from episodic anxiety attacks that may last through an entire day.  (Id. at pp. 446-49).

On January 2, 2014, Plaintiff was diagnosed with clinical depression and prescribed an antidepressant along with her post-cancer treatment prescription for Tamoxifen.  (Id. at pp. 293-95).  Plaintiff continued to be on antidepressant medication with monthly appointments recommended for the next 4-9 months.  (Id. at p. 292).  Plaintiff also continued to have post-surgery infirmities for a number of months including rashes, irritation and inflamation around the surgery and radiation sites, and pain. (Id. at pp. 287-92).

On June 12, 2015, a mammogram revealed that cancer reoccurred in Plaintiff's left breast.  (Id. at pp. 541, 582).  On August 5, 2015, Plaintiff underwent bilateral total mastectomies on her breasts.  (Id. at pp. 553-60).

**The Social Security Administration's Review of Plaintiff's January 7, 2014 Applications For Disability and Supplemental Security Income Benefits**

Plaintiff's January 7, 2014 application for Social Security

Administration Disability Insurance Benefits and her January 7, 2014 application for Supplemental Security Income were initially denied on June 2, 2014. (AR at pp. 77-92, ECF No. 17).

Following the initial denials, Plaintiff moved for reconsideration. On November 25, 2014, the Social Security Administration denied Plaintiff's motion for reconsideration. (Id. at pp. 107-16). On July 22, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at p. 130).

Plaintiff's cancer reoccurred during her application process. On August 5, 2015, Plaintiff underwent bilateral total mastectomies on her breasts. Plaintiff supplemented the record with additional medical records before she had her hearing before the ALJ.

On November 30, 2016, a hearing on Plaintiff's applications for Social Security Administration Disability Benefits and Supplemental Security Income was held before an ALJ. (Id. at pp. 29-76).

On February 1, 2017, the ALJ denied Plaintiff's application for Disability Insurance Benefits. (Id. at pp. 12-22). The ALJ partially granted Plaintiff's application for Supplemental Security Income. (Id.)

Plaintiff asserted that she was disabled for a continuous period following July 15, 2013, approximately at the time of her first breast cancer surgery. Plaintiff claimed that she was disabled for a period of not less than twelve months due to her

various disabilities including carpal tunnel syndrome, sprains/strains and other arthropathies[1], and her twice having breast cancer, surgeries, radiation, and other treatment including physical therapy. (Id. at pp. 14, 203-12). Plaintiff's application indicated that she suffered from chronic pain, migraines, anxiety, panic attacks, and fatigue. (Id. at p. 212).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR at p. 15, ECF No. 17).

The ALJ agreed with Plaintiff that she was not capable of performing her past relevant work as a Massage Therapist. (Id. at p. 20).

The Administrative Law Judge determined that Plaintiff was classified as "advanced age" as of August 3, 2016[2] based on the Social Security Administration regulations. (AR at p. 20, ECF No. 17).

The ALJ found that as of August 3, 2016, there were no jobs

---

[1] Arthropathy is a collective term for a disease of the joints, including swelling, pain, and inflammation.

[2] The ALJ's decision includes a typographical error and states Plaintiff became categorized as "advanced age" as of "3016," when this date was "2016." The record demonstrates that this typo was harmless error and does not provide a basis for remand.

that existed in significant numbers in the economy that Plaintiff could perform.  (Id. at pp. 20-22).

The ALJ found that Plaintiff was entitled to Supplemental Security Income as of August 3, 2016.  (Id. at p. 22).

The ALJ found that Plaintiff was not entitled to Disability Insurance Benefits because she was not under a disability through March 31, 2016, the date she was last insured by the Social Security Administration.  (Id.)  The ALJ found that Plaintiff's infirmities did not render her unable to work for a continuous period of 12 months between July 15, 2013 and March 31, 2016.

 Plaintiff sought review of the Administrative Law Judge's decision with the Appeals Council.  The Appeals Council declined Plaintiff's request for review and rendered the ALJ's decision as the final administrative decision by the Commissioner of Social Security.  (Id. at pp. 1-3).

### STANDARD OF REVIEW

A claimant is disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal

standards and the findings are supported by substantial evidence on the record as a whole.  See 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).

## ANALYSIS

**I.  Plaintiff's Work History Prior to Her Alleged On-Set Date of Disability on July 15, 2013**

Plaintiff is a 57 year-old female.  (Administrative Record ("AR") at p. 20, ECF No. 17).

From 1998 to 2001, Plaintiff worked as a residential aide for detox patients at a drug treatment program while training to be a Certified Alcohol and Drug Counselor.  (Id. at pp. 41-45, 190).

In 2001, Plaintiff began training to be a massage therapist. Plaintiff was employed in a coffee shop and at the library of Central Oregon Community College while she took massage therapy courses.  (Id. at pp. 41, 192).

In 2003, Plaintiff received an Associate's Degree in Massage Therapy.  (Id. at p. 36).  Following her graduation in 2003, Plaintiff was self-employed as a massage therapist for ten years. (Id. at p. 204).

Plaintiff began to experience infirmities including joint pain and carpal tunnel syndrome that were exacerbated by her full-time work as a massage therapist. In 2012, Plaintiff had carpal tunnel surgery on her right hand. (Id. at p. 255). Plaintiff recovered from the surgery but she had difficulty working due to continued joint pain, tendinitis in her elbow, and carpal tunnel developing in her left hand. (Id. at pp. 46-48).

As her conditions worsened, Plaintiff stopped working as a massage therapist on July 15, 2013, shortly before she had her first surgery for breast cancer. (Id. at p. 40).

Plaintiff had a partial mastectomy and more than 30 sessions of radiation for her first treatment of breast cancer. Plaintiff's breast cancer diagnosis exacerbated Plaintiff's ongoing mental health issues. Plaintiff suffered from anxiety, depression, panic attacks, and seasonal affective disorder. Plaintiff was prescribed numerous medications for her post-cancer treatment and for her mental health that had significant side effects including pain, rashes, and mouth sores.

Plaintiff still attempted to work part-time after July 2013, despite her breast cancer surgery and radiation treatment, chronic joint pain, numbness, headaches, depression and anxiety.

In September 2013, Plaintiff began working for ten hours a week as a chore provider for an elderly woman. (Id. at p. 38).

Plaintiff testified that her chore provider employment ended prior to the hearing on November 30, 2016. (Id. at pp. 39-4).

## II. Plaintiff's Medical Evaluations Following Her Alleged On-Set Disability Date Of July 15, 2013

Prior to Plaintiff's alleged on-set date of disability, while engaged as a full-time massage therapist, Plaintiff underwent a right endoscopic carpal tunnel release on September 26, 2012. (<u>Id.</u> at p. 255).

A few months later, on April 16, 2013, Dr. James Verheyden, M.D. found that Plaintiff had left elbow pain that was "a sharp ache in nature and is rated a 6/10. There is pain in the morning, at night, and with activity." (<u>Id.</u> at p. 243). The doctor found that Plaintiff had numbness and tingling in the left arm which had progressively worsened. (<u>Id.</u>) He found that she struggled with pain for over five years and that lifting, gripping, and activity with the left arm exacerbates her symptoms. (<u>Id.</u>) Dr. Verheyden also determined that Plaintiff has pain in her hands, with her left hand worsening. (<u>Id.</u>) Plaintiff was provided with a splint to assist her. (<u>Id.</u> at p. 245).

Plaintiff continued to work as a full-time massage therapist despite her multiple symptoms and joint pain.

### A. First Breast Cancer Surgery on July 24, 2013

On May 17, 2013, a tumor was discovered in Plaintiff's left breast during a routine mammogram screening. (<u>Id.</u> at p. 260). A biopsy revealed it was a grade 2 invasive ductal carcinoma.

(Id.)

On July 24, 2013, Plaintiff had a partial mastectomy of her left breast performed by Surgeon Dr. Andrew Higgins, M.D. (Id. at pp. 338, 408-19). Plaintiff was prescribed Tamoxifen to be taken for the next year post-surgery.

From August 27, 2013 to October 11, 2013, Plaintiff underwent external beam radiation with Dr. Russ Omizo, M.D. (Id. at p. 328). Plaintiff had more than 30 radiation treatments during this period of three months. (Id.)

### B.   Mental Health Diagnoses During Breast Cancer Treatment

Plaintiff suffered from multiple mental infirmities following her first breast cancer diagnosis. Plaintiff was referred for a mental health assessment during her radiation treatment.

On September 27, 2013, Plaintiff was evaluated by Dr. Marc Williams, M.D. (Id. at pp. 445-49). Plaintiff reported that she had episodic anxiety attacks since being diagnosed with breast cancer. (Id. at p. 446). While some of the attacks diminished after 10-15 minutes, "the anxiety may last through the entire day, at least to some extent. She reports occasionally she feels fearful, anxious, and worried as well as feeling physically tense. She also reports symptoms of depression, including feelings of worthlessness, helplessness, sadness and being a failure." (Id.) Plaintiff has had symptoms of depression for much of her life. (Id.)

Dr. Williams found that Plaintiff suffered from a major depressive disorder, chronic pain, and chronic headaches. (Id. at p. 448). Dr. Williams prescribed Fluoxetine for depression as well as Hydroxyzine for severe anxiety. (Id. at p. 449).

Plaintiff continued follow-up care with Oncologist Dr. Stephen Kornfeld, M.D. On October 15, 2013, Plaintiff reported that she had experienced some hot flashes and feelings of depression but she reported that she had improved with the use of her antidepressant medication. (Id. at p. 275). Dr. Kornfeld discussed altering her antidepressant medication to try and improve her symptoms and avoid negative interaction with her post-cancer treatment medication Tamoxifen. (Id. at pp. 275-76).

## C. Complications Following Plaintiff's First Breast Cancer Treatment And Continued Mental Health Treatment

On December 12, 2013, Plaintiff had a follow-up appointment with her Radiation Oncologist Dr. Omizo. She reported that she had a rash under her left breast where she had underwent radiation treatment and that the rash spread to her right breast and her groin. (Id. at p. 265). There were concerns the rash was related to her Tamoxifen prescription as well as its interaction with Plaintiff's antidepressant medication. Dr. Omizo prescribed an antifungal medication to treat the rash. (Id.)

On January 2, 2014, Plaintiff was examined by Dr. Joseph Bachtold, D.O. to assess Plaintiff's continuing depression. (Id.

at p. 293).  Dr. Bachtold explained that Plaintiff had a history
of depression and she "had been on meds for 8-10 years but
stopped these 2 years ago after she ran out of insurance.  She
was recently diagnosed with breast cancer and is taking tamoxifen
which may in part be contributing to her [symptoms]."  (Id. at p.
293).  "The patient and I discussed at length her depressive
symptoms.  I concur that she has clinical depression."  (Id. at
p. 295).  Plaintiff was prescribed the antidepressant Effexor to
help treat her depression.  (Id.)

On January 30, 2014, Plaintiff was examined again by Dr.
Bachtold to monitor her depression and also to treat a post-
surgery non-healing lesion on her lower right back that did not
heal for "a number of months."  (Id. at p. 290).  Plaintiff's
lesion was sutured and treated with medication.  (Id. at p. 292).
Dr. Bachtold recommended that Plaintiff continue on her
antidepressant medication and continue to seek treatment for the
next "4-9 months" with cognitive behavioral therapy recommended.
(Id.)

More than twelve months after Plaintiff's first breast
cancer surgery, Plaintiff continued to undergo treatment.  On
August 21, 2014, Plaintiff had another follow-up appointment with
Oncologist Dr. Kornfeld.  (Id. at p. 384).  Plaintiff reported
that she had been experiencing more rashes, mouth sores, and
significant hot flashes.  Plaintiff continued to take Effexor to
treat her depression.  Plaintiff also suffered from fluctuating
weight, fatigue, insomnia, constipation, cough, urinary

frequency, headaches, tingling, and hearing issues. (Id.)

**D.    Elbow Tendinitis And Carpal Tunnel Syndrome Following Plaintiff's First Breast Cancer Treatment**

Plaintiff suffered from a number of other physical ailments during the more than two year period between Plaintiff's first breast cancer surgery in July 2013 and Plaintiff's second breast cancer surgery in August 2015.

Shortly after Plaintiff ended her radiation treatment for her first breast cancer in October 2013, Plaintiff was experiencing increased joint pain, pain in her left elbow, and carpal tunnel in her left hand.

On October 16, 2013, Plaintiff stated that she was having dull throbbing pain following activities using her left elbow. (Id. at p. 296).  She had previously received steroid injections which provided relief in her elbow for 3 to 6 months, but the pain returned.  (Id.)

On December 9, 2014, Plaintiff stated that her right hand had improved following her September 2012 carpal tunnel surgery, but her left hand continued to worsen.  (Id. at p. 461).  "She states her numbness has become more frequent throughout the day and is now starting to wake her at night occasionally.  She also reports aching pain at the base of her thumb.  Pain is described as a deep, dull ache that is rated a 3/10."  (Id.)

On February 2, 2015, Plaintiff underwent a left endoscopic carpal tunnel release surgery on her left hand.  (Id. at p. 479).  At a post-surgery appointment on February 13, 2015, Plaintiff's

medical records stated that she continued to have tenderness and pain. (Id. at p. 460). The records stated that "patient understands that the final outcome with regard to their numbness and tingling will not be known for 6-12 months. Strength not expected to return for close to 3 months." (Id.)

**E.    Second Breast Cancer Surgery on August 5, 2015**

Four months after her carpal tunnel surgery on her left hand, on June 12, 2015, a mammogram revealed that cancer reoccurred in Plaintiff's left breast. (Id. at pp. 541, 582). On August 5, 2015, Plaintiff underwent bilateral total mastectomies on her breasts. (Id. at pp. 553-60).

In a follow-up appointment on August 8, 2015, Surgeon Dr. Andrew Higgins, M.D. found that Plaintiff was "healing up reasonably well at this juncture. Her drain output is a little too high to remove safely." (Id. at p. 589).

On September 11, 2015, Dr. Higgins was able to remove Plaintiff's right side drain but the "left output is still a bit high as would be expected as it was previously radiated. We will see whether this decreases." (Id. at p. 591). A few weeks later on October 1, 2015, Dr. Higgins removed the left side drain but stated there was "some small risk of development of a seroma." (Id.)

On December 4, 2015, Plaintiff returned to Dr. Higgins who performed two kenolog injections and instructed Plaintiff to follow up for further keloid management. (Id. at p. 594).

18

Plaintiff reported tightness in her chest and upper back following the mastectomies.  Plaintiff was prescribed physical therapy.

An initial physical therapy evaluation was performed on January 8, 2016.  (Id. at p. 506).  The initial evaluation stated that Plaintiff has tightness across the mastectomy incision with pain when raising her arms.  "She is concerned regarding lymphedema risk and has not been educated in prevention.  She was treated today with MLD and given a HEP to address anterior chest wall flexibility and radiation fibrosis."  (Id.)  She attended physical therapy once a month to alleviate tightness in her chest and back and to assist with her full range of motion in her shoulders.  (Id. at pp. 508-534).

**F.    November 30, 2016 Letter From Dr. Soni Andreini Poulsen**

On November 30, 2016, Dr. Soni Andreini Poulsen, who is Plaintiff's treating primary care physician, provided a letter for the Social Security Administration to explain the variety of Plaintiff's infirmities. Dr. Poulsen stated that Plaintiff was limited as follows:

-    can lift or carry up to 10 pounds;

-    can frequently lift or carry less than 10 pounds;

-    can stand or walk for 20 minutes at one time;

-    can stand or walk in an 8-hour workday for less than 2 hours;

-    can sit at one time for 8 hours;

- can sit in an 8-hour day for more than 6 hours;

- is limited in upper extremities;

- can never climb, kneel, crouch, or crawl;

- can occasionally balance, stoop/bend, reach overhead, finger, and handle;

- can frequently reach shoulder height and feel.

(Id. at pp. 598-99).

Dr. Poulsen stated that Plaintiff's numerous medical issues including anxiety, breast cancer, depression, hyperlipidemia, headaches, carpal tunnel syndrome, obesity, and elbow pain, along with her panic attacks and seasonal affective disorder would limit her ability to work. (Id. at pp. 597-99).

## III. Applicable Law

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits under the Social Security Act, 42 U.S.C. §§ 423, 1382c. The regulations establish a five-step sequential evaluation process to determine if a claimant is disabled pursuant to either Disability Benefits or Supplemental Security Income. The Commissioner of the Social Security Administration reviews a disability claim by evaluating the following:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step

three.

(3)  Does the claimant's impairment, or combination of
     impairments, meet or equal an impairment listed in
     20 C.F.R. Part 404, Subpart P, Appendix 1?  If so,
     the claimant is disabled.  If not, proceed to step
     four.

(4)  Does the claimant possess the residual functional
     capacity to perform his past relevant work?  If
     so, the claimant is not disabled.  If not, proceed
     to step five.

(5)  Does the claimant's residual functional capacity,
     when considered with the claimant's age,
     education, and work experience, allow him to
     adjust to other work that exists in significant
     numbers in the national economy?  If so, the
     claimant is not disabled.  If not, the claimant is
     disabled.

Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th

Cir. 2006) (citing 20 C.F.R. §§ 404.1520; 416.920).

The claimant has the burden of proof at steps one through

four, and the Commissioner has the burden of proof at step five.

Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

## IV.  The Administrative Law Judge Reviewed Plaintiff's
##      Application By Using The Five-Step Sequential Evaluation

At Plaintiff's November 30, 2016 administrative hearing, the

Administrative Law Judge ("ALJ") for the Social Security

Administration reviewed Plaintiff's claim by engaging in the

five-step sequential evaluation.

The Parties agree there were no errors in the first three

steps of the administrative review process.

**At step one**, the ALJ found that Plaintiff met the insured

status requirements for Disability Insurance Benefits through

March 31, 2016. (AR at p. 14, ECF No. 17).

Plaintiff does not dispute that she was required to demonstrate that she was disabled for a period of not less than 12 months between July 15, 2013 (her alleged onset date of disability) and March 31, 2016 (her last date insured), in order for her to be eligible for Disability Insurance Benefits.

**At step two**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2013. (Id.) The ALJ found that Plaintiff's part-time work following July 15, 2013 did not rise to the level of substantial gainful employment. (Id.)

**At step three**, the ALJ found that Plaintiff has the following severe impairments: carpal tunnel syndrome, sprains/strains and other arthropathies, and breast cancer. (Id.)

**At step four**, the ALJ reviewed the record and made a finding as to Plaintiff's residual functional capacity.

The ALJ found that Plaintiff had not demonstrated a disability based on either her obesity or her mental impairments for depression and anxiety.

The ALJ found that Plaintiff could not perform her past work as a massage therapist since July 15, 2013.

The ALJ found that between July 15, 2013 and August 3, 2016, Plaintiff could perform work as follows:

> The claimant can lift and/or carry 20 pounds
> occasionally and 10 pounds frequently.
>
> The claimant can stand and/or walk for six hours out of

an eight-hour workday with regular breaks.

The claimant can sit for six hours out of an eight-hour workday with regular breaks.

The claimant can occasionally reach over her head with the left, non dominant upper extremity.

The claimant can occasionally handle bilaterally.

(AR at p. 17, ECF No. 17).

**At step five**, the ALJ inquired with the vocational expert to evaluate if there were other jobs that Plaintiff could perform.

The ALJ found that prior to August 3, 2016, Plaintiff could have performed work as an Office Helper, a Telephone Survey Worker, or a Photo Copy Machine Operator. (Id. at p. 21).

The ALJ found that as of August 3, 2016, the date the claimant's age category changed to someone of advanced age, Plaintiff was disabled.

Plaintiff's application for Disability Insurance Benefits was denied because she was not insured as of August 3, 2016.

Plaintiff's application for Supplemental Security Income was granted as of August 3, 2016, but it was denied between July 15, 2013 and August 2, 2016.

## V.    The ALJ Found Plaintiff Was Eligible for Supplemental Security Income But Deemed She Was Ineligible For Disability Insurance Benefits

At step five of the five-step sequential process, the ALJ must determine if the claimant is able to do any other work considering her residual functional capacity, age, education, and

work experience.  20 C.F.R. § 404.1520(g)(1).  In making this
determination, the ALJ relies on the Dictionary of Occupational
Titles as well as testimony of vocational experts who testify
about specific occupations that a claimant can perform based on
their residual functional capacity.  Zavalin v. Colvin, 778 F.3d
842, 845-46 (9th Cir. 2015).

     In cases involving individuals 55 years of age or older, who
are unable to perform their past work, the ALJ must make a
specific finding as to the amount of vocational adjustment
required for the claimant to transfer to a new position.  20
C.F.R. § 404.1568(d)(4); Coletta v. Massanari, 163 F.Supp.2d
1101, 1105 (N.D. Cal. 2001) (citing Renner v. Heckler, 786 F.2d
1421, 1425 (9th Cir. 1986) (per curiam)).

     The ALJ found that Plaintiff did not have transferable
skills suitable for vocational adjustment.  He determined as of
the date Plaintiff turned 55 years old that she was disabled
pursuant to the agency's regulations.  See 20 C.F.R. pt 404,
Subpt. P, App. 2, § 200.00(f); Bray v. Comm'r of Soc. Sec.
Admin., 554 F.3d 1219, 1225 (9th Cir. 2009).

     The onset date of disability can be critical to an
individual's application for disability benefits.  Wellington v.
Berryhill, 878 F.3d 867, 872 (9th Cir. 2017).  A claimant can
qualify for Social Security Disability Insurance Benefits only if
the disability begins by the date last insured.  Disability
Insurance Benefits can be paid for up to 12 months before the
application was filed.  42 U.S.C. § 423(a)(1), (c)(2), (d)(1)(A).

In contrast, a claimant is eligible for Supplemental Security Income once she becomes disabled, but she cannot receive benefits for any period before her application date. 42 U.S.C. §§ 1382(c)(2), (c)(7), 1382c(a)(3)(A).

For both programs, the onset disability date is the date when the claimant is unable to engage in any substantial gainful activity due to physical or mental impairments that can be expected to last for at least 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ determined the Plaintiff's onset date of disability was August 3, 2016.

Plaintiff was denied Disability Insurance Benefits because she was no longer insured as of March 31, 2016, before the August 3, 2016 date upon which the ALJ found Plaintiff was disabled.

Plaintiff was granted Supplemental Security Income as of August 3, 2016.

Plaintiff challenges the denial of her Disability Insurance Benefits and the partial denial of her Supplemental Security Income Benefits because the ALJ failed to properly consider the opinions of her treating physicians and the totality of her circumstances of her disability before March 31, 2016.

## VI. Remand Is Required To Enable The ALJ To Develop The Record And Properly Consider The Totality Of Plaintiff's Incapacity And Her Treating Physicians' Opinions

Plaintiff argues that the ALJ did not properly consider the opinions of Plaintiff's treating physicians and instead relied on

the opinions of the State Agency non-examining physicians.

Plaintiff specifically argues that the ALJ did not properly evaluate the opinion of Plaintiff's primary care physician, Dr. Soni Poulsen.

Plaintiff also argues that the ALJ did not consider the totality of her circumstances that included two separate bouts of breast cancer, multiple carpal tunnel surgeries, chronic joint pain, headaches, and a history of mental illness that includes panic attacks, anxiety, and depression. Plaintiff asserts that the ALJ failed to consider the longevity and severity of her symptoms as a result of her various infirmities including the recovery time from her cancer treatments and carpal tunnel surgeries.

### A. The ALJ Did Not Properly Evaluate The Opinion Of Plaintiff's Primary Treating Physician, Dr. Soni Poulsen

A treating physician's opinion is entitled to the greatest weight because the treating physician is hired to examine and treat the patient over an extended period of time and has the best opportunity to assess the claimant. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Treating physicians are "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. §§ 404.1527(c), 416.927(c).

An ALJ must state clear and convincing reasons that are supported by substantial evidence in order to reject the

uncontradicted opinion of the treating physician.  <u>Bayliss v.
Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005).  An ALJ may reject
a treating doctor's opinion if it is contradicted by another
doctor's opinion as long as the ALJ provides specific and
legitimate reasons that are supported by substantial evidence.
<u>Id.</u>

Here, Dr. Soni Poulsen provided a letter indicating that she
was Plaintiff's primary care provider for two years.  (AR at p.
597, ECF No. 17).  She explained that Plaintiff had a variety of
infirmities and symptoms including anxiety, breast cancer,
depression, headaches, carpal tunnel syndrome, obesity, elbow
pain, decreased range of motion in her shoulders, and
arthralgias.  (<u>Id.</u>)  Dr. Poulsen stated that Plaintiff had
significant limitations in lifting and could stand for less than
two hours in an 8-hour day.  (<u>Id.</u> at p. 598).

Dr. Poulsen explained that Plaintiff has difficulty with her
range of motion in shoulders primarily due to the scar tissue
from her breast cancer treatments.  (<u>Id.</u> at p. 599).  She also
stated that Plaintiff has joint pain and some tingling and
numbness in her hands.  (<u>Id.</u>)  She explained that Plaintiff
experiences significant side effects from her medications
including pain and fatigue.  (<u>Id.</u>)

Dr. Poulsen stated that Plaintiff suffers from mental
impairments including panic attacks and seasonal affective
disorder.  (<u>Id.</u>)

Dr. Poulsen explained that "physically [Plaintiff] would

likely be able to do a sedentary job but from a mental or emotional standpoint, she would likely miss more than 2 days per month. [Plaintiff] experiences more pain when under emotional stress." (Id. at p. 600).

The ALJ gave little weight to Dr. Poulsen's opinions, stating "[t]he claimant's stated level of activities and the evidence of record is more consistent with the findings of the State agency consultants.  However, the claimant's symptoms of arthralgia and pain in her upper extremities have been considered and incorporated into the adopted residual functional capacity." (AR at p. 20, ECF No. 17).

### 1.  The ALJ Erred By Relying On The State Agency Physicians' Opinions

The ALJ must provide clear and convincing reasons for rejecting the treating physician's opinion when there is no clear contradiction between the treating physician's opinion and the medical record.  The ALJ did not explain how Dr. Poulsen's opinion was contradicted by any other treating physician or examining physician's evaluation in the record.  The ALJ's statement that he prefers the findings of the State agency physicians is insufficient.

An ALJ may not rely on the opinion of a non-examining physician alone to reject the opinion of the treating physician as to the severity of the claimant's impairments.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

The ALJ is required to consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship and the supportability of the treating physician's opinion in evaluating its weight. Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017). Failure by the ALJ to evaluate these factors with respect to the treating physician's opinion constitutes reversible legal error. Id.

The ALJ did not properly evaluate these factors and remand is required.

### 2. The ALJ Provided No Basis To Reject Dr. Poulsen's Opinion Based On Plaintiff's Daily Activities

The ALJ stated that Dr. Poulsen's findings were inconsistent with Plaintiff's testimony about her daily activities. The ALJ did not provide any analysis of the purported inconsistencies.

A claimant's testimony may be rejected only for specific, clear and convincing reasons. Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014). The ALJ provided no basis for this finding and did not point to any testimony in the record that he found to be inconsistent with Dr. Poulsen's opinion.

The ALJ is required to specifically identify the testimony from a claimant that he finds not to be credible and explain what evidence undermines the testimony. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Remand is required for the ALJ to properly evaluate Plaintiff's testimony.

Brown-Hunter v. Colvin, 806 F.3d 487, 494-95 (9th Cir. 2015).

**B.    The ALJ Had A Duty To Develop The Record**

On appeal, the Agency argues that the ALJ properly rejected Dr. Poulsen's opinion because there were no treatment notes in the record.

This is not a proper basis to reject Dr. Poulsen's opinion. Dr. Poulsen stated that she was Plaintiff's primary care physician of two years. If the ALJ felt he needed more information from Dr. Poulsen, he had the ability to request it. In fact, the ALJ is required to develop the record and evaluate the medical opinions provided. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

Plaintiff correctly argues that the ALJ "could have obtained testimony from a medical expert, sent the file back to the Agency's non-examining consultants for review of the entire file, arranged for a consultative examination...or even (perhaps most simply) re-contacted Dr. Poulsen with questions or for clarification." (Pla.'s Opening Brief at p. 25, ECF No. 19). Plaintiff points out that "the ALJ cites to literally not a single specific piece of evidence to support his finding that the record is not consistent. In any event, if the ALJ had any confusion or concern regarding Dr. Poulsen's opinion, it was plainly within his authority to seek clarification before rejecting his opinion." (Opening Brief at pp. 20-21, ECF No. 19).

The ALJ did not seek clarification from Dr. Poulsen but rather improperly relied on the State agency opinions.  Lopez v. Berryhill, 2018 WL 1626683, *14 (N.D. Cal. Apr. 4, 2018) (finding the ALJ erred in giving greater weight to the State agency opinions than those of the examining and treating physicians).

### C.   The ALJ Did Not Consider The Totality Of the Circumstances Or The Record As A Whole

The ALJ improperly relied on discrete findings from various records that were taken out of context.  It is well-settled that an "ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."  Williams v. Colvin, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015).

An ALJ cannot selectively rely on some entries and ignore others indicating continued or severe impairments in a claimant.  Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001).  Here, Plaintiff suffered from multiple, severe impairments including two different occurrences of breast cancer, multiple carpal tunnel surgeries, elbow and joint pain, and various mental infirmities.  The ALJ did not consider these effects collectively but selectively picked out instances in the medical record that noted improvement in Plaintiff's symptoms.

Much of Plaintiff's medical record was ignored.  The ALJ specifically ignored Dr. Poulsen's findings as to Plaintiff's

mental infirmities.  This evidence was particularly important given the question as to the onset date of Plaintiff's disability.  Determining an exact onset date of disability can be exceptionally difficult when mental illness contributes to a claimant's disability.  <u>Sutherland v. Comm'r of Soc. Sec. Admin.</u>, 234 F.Supp.3d 1063, 1069 (D. Or. 2017).  "Mental disorders may manifest themselves over a period of time.  Consequently, the precise date of onset of a disabling psychological impairment may be difficult, or impossible, to ascertain, and the services of a specialist may be necessary to infer the onset date."  <u>Morgan v. Sullivan</u>, 945 F.2d 1079, 1081 (9th Cir. 1991) (per curiam).

Remand on an open record is necessary to allow the ALJ to develop the record, consider the totality of Plaintiff's circumstances, and properly evaluate the opinion of Dr. Poulsen and Plaintiff's numerous other treating physicians.  <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004).

//

//

//

//

//

//

//

//

//

## CONCLUSION

The Commissioner of Social Security Administration's decision is **REVERSED AND REMANDED** for further proceedings on an open record that is consistent with this Order.

The Clerk of Court shall **CLOSE THE CASE.**

IT IS SO ORDERED.

DATED: March 29, 2019, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Laurie Terryl Chandler v. Commissioner of Social Security Administration; Civ. No. 18-00280 HG-RLP; **ORDER REVERSING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION COMMISSIONER AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

33